UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | |
|---|---|
| GERTRUDE BURNS, | Civil Action No.: 4:07-cv-4100-TLW-TER |
| Plaintiff, | |
| -vs- | **REPORT AND RECOMMENDATION** |
| GEORGIA-PACIFIC CONSUMER PRODUCTS, LP, | |
| Defendant. | |

## I.  INTRODUCTION

This is an employment discrimination case. In her Complaint, Plaintiff alleges discrimination based upon gender, race and age[1] in violation of Title VII of the Civil Rights Act of 1964 (Title VII), 42 U.S.C. § 2000e, et seq. Presently before the Court is Defendant's Motion for Summary Judgment (Document # 34).

All pretrial proceedings in this case were referred to the undersigned pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Rule 73.02(B)(2)(g), DSC. Because the Motion for Summary Judgment is a dispositive motion, this Report and Recommendation is entered for review by the district judge.

## II.  FACTS

Plaintiff is an African American female over the age of 40. She was hired by Defendant Georgia-Pacific Consumer Products LP's Darlington facility in 1966 immediately after she graduated from high school. Plaintiff Dep. at 16. Defendant's Darlington facility manufactures Dixie paper

---

[1] Age is not a protected group under Title VII. Thus, the Court will presume that Plaintiff is seeking relief under the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 621, et seq.

cups, paper plates, and other products. Anderson[2] Declaration at ¶ 4. The facility includes a Pressware Department, where plates are produced (sometimes referred to as the Plate Plant), and a Cup Plant. Id. Plaintiff began her career at the facility working as a cleaner of bathroom dispensers. Plaintiff Dep. at 17. She then transferred to the Plate Plant where she worked as a reinspector of Georgia-Pacific paper products. Id. As a reinspector, Plaintiff repaired paper products that had problems such as bad edges or grease. Id. at 19. Plaintiff then worked in the Plate Plant as a packer and wrapper. Id. at 20-21. In this position, Plaintiff's duties included packing plate products for shipping. Id. Plaintiff admits that in this position, she had no supervisory responsibilities. Id.

In 1976, Plaintiff placed a bid to become a reinspector of products in the Cup Plant. Id. at 22. Plaintiff learned of this position after the Company posted the opening on its bulletin board with required qualifications. Id. at 23. Plaintiff completed the required Transfer for Request form, and she was transferred to the position based on her bid. Id. However, within a year she transferred back to the Plate Plant. Id. at 24. and Ex. 1. Plaintiff left the Cup Plant because it "wasn't as friendly" as the Plate Plant. Id. at 27. This was Plaintiff's last experience in the Cup Plant. Id. at 42 and Ex. 1.

In 1980, Plaintiff became a relief operator in the Plate Plant. Id. at 27. Plaintiff admits that she received this position after seeing it posted on the Company bulletin board and bidding for it through the provided company form. Id. at 33-34. Her job as a relief operator consisted of operating the machines of other employees when they had a scheduled break or needed to use the restroom. Id. at 28-31. She did not report to a team leader but directly to her supervisor. Anderson Dep. at 27, 37. Plaintiff admits that she had no supervisory responsibilities as a relief operator. Plaintiff Dep.

---

[2]Thomas Anderson is the Human Resources Manager for the Darlington facility. Anderson Dec. at ¶ 3.

at 33. Plaintiff remained a relief operator until her retirement in August 2007. Id. at 27 and Ex. 1.

Defendant typically posts notices regarding available positions on an internal bulletin board. Anderson Dep. at 11. These notices include the responsibilities and qualifications for the position. Id. at 12. To apply, employees must fill out a Request for Transfer form and submit their resumes if requested. Id. at 11, 13, 40. The Human Resources department and the relevant department supervisor or manager are responsible for making transfer or promotion decisions. Id. at 23-24. On occasions where an identified successor, i.e., an individual with the necessary qualifications who is in a position directly below the level of the open position, is in place, positions may be filled without being posted. Id. at 13.

At the Darlington facility, positions generally fit into one of three categories: non-leadership positions, leadership positions, and salaried supervisory/management positions. Anderson Dec. at ¶ 5. Non-Leadership positions may require specific technical abilities or that an employee be available to work particular shifts or times. Anderson Dep. at 13. Leadership positions such as team or shift leaders do not require prior supervisory or leadership experience, but candidates should have an ability to work with other employees and a high school diploma or GED. Id. at 31. Supervisory/management positions require prior supervisory or leadership experience and a Bachelor's Degree is typically preferred. Id. at 13, 25-26, 33, 34.

In September 2006, the position of Pressware Converting Supervisor came open in the facility's Plate Plant. Plaintiff Dep. at 75 and Ex. 6. The qualifications for this position included supervisory experience, specific experience with plate production, and a preference for an individual with a Bachelor's Degree. Anderson Dep. at 32. On September 18, 2006, Plaintiff wrote a letter to the facility's Operations Manager Jeffrey Esser expressing interest in a supervisor position in the

Pressware Department and any other supervisor position that became available in the future. Plaintiff Dep. at 75; Anderson Dep. at 40. Defendant has never considered general letters of interest to be an application for an open position. Anderson Dep. at 17. Burns admits she has never known of anyone who applied for an open position in this manner, never asked anyone in Human Resources whether a letter of interest would be considered an appropriate application for an open position, and never contacted anyone to follow-up on her letter. Plaintiff Dep. at 81, 107. At her deposition, Plaintiff admitted she did not go to college and has no supervisory experience. Id. at 13, 22. It is undisputed that this position was never filled. Burns Dep. at 76; Anderson Dep. at 34.

In October 2006, the position of Converting Supervisor was open in the Cup Plant. Anderson Dec. at ¶ 8. The position required prior supervisory experience and a background in using technology required for cup production. Id. The Company hired Justin Johnston to fill the position. Id. Johnston possessed the requisite qualification for the position, having 3 years experience as a shift supervisor and having been a Cup Machine mechanic at Georgia-Pacific's Fort Smith facility. Id. Plaintiff agreed that Johnston had the requisite skills for this position. Id. at 78.

At her deposition, Plaintiff claimed that she should have been considered for this position as well. Id. at 79. Nevertheless, Plaintiff testified that she "hasn't been over to the cup plant in a long time," did not want to return to the Cup Plant, and "didn't know too much about the Cup Plant." Id. at 45, 77, 79. Plaintiff also admitted that the Cup Plant had undergone vast technological updates that required computer knowledge and that she had no formal computer training nor any computer experience while at the facility. Id. at 42-43, 45.

### III. STANDARD OF REVIEW

The moving party bears the burden of showing that summary judgment is proper. Summary judgment is proper if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Rule 56(c), FRCP; Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Summary judgment is proper if the non-moving party fails to establish an essential element of any cause of action upon which the non-moving party has the burden of proof. Celotex, 477 U.S. 317. Once the moving party has brought into question whether there is a genuine issue for trial on a material element of the non-moving party's claims, the non-moving party bears the burden of coming forward with specific facts which show a genuine issue for trial. Fed.R.Civ.P. 56(e); Matsushita Electrical Industrial Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574 (1986). The non-moving party must come forward with enough evidence, beyond a mere scintilla, upon which the fact finder could reasonably find for it. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986). The facts and inferences to be drawn therefrom must be viewed in the light most favorable to the non-moving party. Shealy v. Winston, 929 F.2d 1009, 1011 (4th Cir. 1991). However, the non-moving party may not rely on beliefs, conjecture, speculation, or conclusory allegations to defeat a motion for summary judgment. Barber v. Hosp. Corp. of Am., 977 F.2d 874-75 (4th Cir. 1992). The evidence relied on must meet "the substantive evidentiary standard of proof that would apply at a trial on the merits." Mitchell v. Data General Corp., 12 F.3d 1310, 1316 (4th Cir. 1993).

Rule 56(e) provides, "when a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." See also

Celotex, 477 U.S. at 324 (Rule 56(e) permits a proper summary judgment motion to be opposed by any of the kinds of evidentiary materials listed in Rule 56(c), except the mere pleadings themselves). To raise a genuine issue of material fact, a party may not rest upon the mere allegations or denials of his pleadings. Rather, the party must present evidence supporting his or her position through "depositions, answers to interrogatories, and admissions on file, together with ... affidavits, if any." Id. at 322. See also Cray Communications, Inc. v. Novatel Computer Systems, Inc., 33 F.3d 390 (4th Cir. 1994); Orsi v. Kickwood, 999 F.2d 86 (4th Cir. 1993); Local Rules 7.04, 7.05, D.S.C.

## IV. DISCUSSION

### A. Disparate Treatment[3]

Plaintiff claims that Defendant made the decision not to promote her based upon her race, gender, and age. Under the analysis set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973)[4], the plaintiff has the initial burden of demonstrating a prima facie case of discrimination. Bryant v. Bell Atlantic Maryland, Inc., 288 F.3d 124, 133 (4th Cir. 2002). In order to prove a prima facie case of discrimination for failure to promote, a plaintiff must prove that (1) he is a member of a protected group; (2) he applied for the position in question; (3) he was qualified for the position; and (4) he was rejected for the position under circumstances giving

---

[3]In her Complaint, Plaintiff alleges disparate treatment based up age, race and gender. Thus, Defendant moves for summary judgment on those claims. In her Response to Defendant's Motion, Plaintiff appears to have abandoned her disparate treatment claims and raises for the first time that Defendant's hiring practices have a disparate impact on minority employees. Arguably, there are one or two sentences in Plaintiff's Response that address Defendant's arguments regarding disparate treatment. Thus, the undersigned will address the merits.

[4]The McDonnell Douglas analysis was refined in St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993), and Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000).

rise to an inference of unlawful discrimination. <u>Anderson v. Westinghouse Savannah River Company</u>, 406 F.3d 248, 268 (4th Cir.2005) (Title VII); <u>Laber v. Harvey</u>, 438 F.3d 404, 430 (4th Cir. 2006).

If Plaintiff establishes a <u>prima facie</u> case, the burden shifts to Defendant to produce a legitimate, nondiscriminatory reason for the denial of the promotion. <u>Texas Dept. of Community Affairs v. Burdine</u>, 450 U.S. 248, 254 (1981). This is merely a burden of production, not of persuasion. <u>St. Mary's Honor Center v. Hicks</u>, 509 U.S. 502, 506 (1993).

Once Defendant has met its burden of production by producing its legitimate, nondiscriminatory reason, the sole remaining issue is "discrimination <u>vel non</u>." <u>Reeves v. Sanderson Plumbing Products, Inc.</u>, 530 U.S. 133, 143 (2000)(citing <u>Postal Service Bd. of Governors v. Aikens</u>, 460 U.S. 711, 716 (1983)). In other words, the burden shifts back to Plaintiff to demonstrate by a preponderance of the evidence that the legitimate reason produced by Defendant is not its true reasons, but was pretext for discrimination. <u>Reeves</u>, 530 U.S. at 143. Throughout the burden shifting scheme set forth in <u>McDonnell Douglas</u>, the ultimate burden of proving that Defendant intentionally discriminated against Plaintiff remains at all times with Plaintiff. Plaintiff has the ultimate burden of presenting evidence from which a reasonable jury could conclude defendant intentionally discriminated against her.

As an African-American female over the age of 40, Plaintiff is a member of each of the protected classes for which she claims discrimination. However, Plaintiff fails to present evidence that she applied for any open positions, was qualified for any of the open positions, or was rejected for the positions under circumstances giving rise to an inference of unlawful discrimination.

First, it is undisputed that Plaintiff never completed a Request for Transfer form for the positions at issue. Prior to the opening posted in September of 2006, Plaintiff wrote a letter to the Operations Manager expressing interest in a supervisor position in the Pressware Department and any other supervisor position that became available in the future. However, if a person does not complete a Request for Transfer form, he is not considered for a position. Id. at 40. Anderson testified in his deposition that he had never known of an instance where the Human Resources department ever accepted a general letter of interest as an application for a specific position. Anderson Dep. at 17. Plaintiff also testified that she has never known any employee to receive a promotion by writing a general letter of interest. Plaintiff Dep. at 107. Plaintiff knows of the proper procedure for applying for a promotion, because she submitted a Request for Transfer form for each of the promotions she received in the past. Thus, Plaintiff's prima facie case fails on this issue. See, e.g., Tyndall v. Dynaric, Inc., 997 F. Supp. 721, 727 – 28 (E.D. Va. 1998) (holding that as a matter of law, "a generally expressed interest in 'advancing in employment'" does not constitute an application for a position); Brown v. Coach Stores, Inc., 163 F.3d 706, 709-710 (2d Cir. 1998) (if generally requesting promotion in annual review were sufficient application, employers would be unfairly burdened in their promotion efforts).

Additionally, Plaintiff fails to show she was qualified for the positions in question. Plaintiff asserts that she should have been considered for the three supervisory positions that came available between the time she sent her letter of interest and the time she retired, including the Pressware Department supervisory position and the Cup Plant supervisory position discussed above.[5]

---

[5] In her deposition, Plaintiff remarks that a Human Resources position also became available after she sent the letter, but later in her deposition she indicates that she was not actually interested in that position. Plaintiff Dep. at 77, 79.

Both the Pressware Department and Cup Plant supervisory positions required prior supervisory experience. Plaintiff's counsel argues in Plaintiff's Response that Plaintiff's position as a relief operator was a "leadership position" because "Plaintiff was in a position to direct other employees regarding their break times." Plaintiff's Response at 5. Counsel's argument is not reflective of the facts in the record, see Plaintiff Dep. at 28-31, and counsel's arguments do not create an issue of fact regarding Plaintiff's experience. Also, Plaintiff herself admits that she had no supervisory experience. Further, under Fourth Circuit case law, a plaintiff cannot establish her own criteria for judging her qualifications for the promotion; she must compete for the promotion based on the qualifications established by her employer. DeJarnette v. Corning Inc., 133 F.3d 293, 299 (4th Cir.1998); Beall v. Abbott Labs., 130 F.3d 614, 620 (4th Cir. 1997) ("Absent evidence of retaliatory motive, we leave to the employer's discretion the method of evaluating an employee's job performance"); see also Jiminez v. Mary Washington Coll., 57 F.3d 369, 383 (4th Cir. 1995) ("The crucial issue in a Title VII action is an unlawfully discriminatory motive for a defendant's conduct, not the wisdom or folly of its business judgment"). Because Plaintiff had no supervisory experience, she was not qualified for those positions.

In addition, the supervisory position in the Cup Plant also required technical expertise in cup production. Anderson Dec. at ¶ 8. Plaintiff's only experience in the Cup Plant was for a short period of time in the 1970s. Plaintiff admits that the Cup Plant had undergone vast technological updates that required computer knowledge and that she had no formal computer training nor any computer experience while at the facility.

In sum, Plaintiff fails to present any evidence that she was qualified for either of the supervisory positions at issue here. Though Plaintiff may have felt she was qualified for these position,

"it the perception of the decision maker and not the self-assessment of the Plaintiff that is relevant." Langerman v. Thompson, 155 F.Supp.2d 490, 501 (D. Md. 2001).

Finally, Plaintiff fails to present any evidence that she was rejected for the position under circumstances giving rise to an inference of unlawful discrimination. As already established above, Plaintiff did not apply for the positions at issue and, thus, was not rejected for them. Both Plaintiff and Anderson testified that they were unaware of any employees receiving a promotion after simply submitting a letter expressing the desire for a promotion.

Nevertheless, assuming Plaintiff has established a prima facie case of discrimination, Defendant has produced legitimate, nondiscriminatory reasons for the failure to promote Plaintiff. First, as discussed above, Plaintiff did not apply for the positions at question. It is undisputed that Plaintiff did not complete a Request for Transfer form for either of the supervisory positions. Second, the supervisory position in the Pressware Department was never filled. Plaintiff Dep. at 76; Anderson Dep. at 34. See, e.g., Metsopulos v. Runyon, 918 F. Supp. 851, 862 (D.N.J. 1996) (promotion claim dismissed where vacant position abolished prior to filling it); Carter v. Pena, 14 F. Supp. 2d, 1, 6 (D.D.C. 1997) (Plaintiff's prima facie case failed because employer cancelled vacancy announcements prior to selection of individual to fill vacancies). Finally, Plaintiff was not qualified for the supervisory position in the Cup Plant because it required previous supervisory experience and experience with the technology used for cup production and, as Plaintiff admits, she had neither. Johnston, who Defendant chose for the supervisory position in the Cup Plant, had served as a cup machine mechanic and a shift supervisor and thus, had the requisite experience for the position.

Because Defendant has proffered legitimate, nondiscriminatory reasons for the failure to promote Plaintiff, the burden shifts back to Plaintiff to show that Defendant's articulated reasons for its promotion decisions are pretextual. Plaintiff fails to sustain this burden. In her deposition, Plaintiff names several employees whom she believes Defendant discriminated against either because of race, gender, or sex. See Plaintiff Dep. at 92-97. To the extent these conclusory statements are relevant to Plaintiff's claim, "[a] plaintiff's own assertions of discrimination in and of themselves are insufficient to counter substantial evidence of legitimate nondiscriminatory reasons for an adverse employment action." Williams v. Cerberonics, Inc., 871 F.2d 452, 456 (4th Cir.1989) (citing Gairola v. Commonwealth of Virginia Dept. of General Services, 753 F.2d 1281, 1288 (4th Cir.1985)); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (stating that plaintiff can not rely on conclusory allegations to create a factual dispute warranting trial). Accordingly, Plaintiff's claims of discrimination based upon race, gender, and age are without merit and summary judgment is proper.[6]

**B.     Disparate Impact**[7]

In her Response to the Motion for Summary Judgment, Plaintiff argues that the educational

---

[6]In her Complaint, Plaintiff also alleges that Defendant discriminated against her with respect to grievances she asserted about a coworker, and Defendant addresses these allegations in its Motion. Plaintiff's Response cannot even arguably be read to address the grievance process and, as such, it appears Plaintiff has abandoned that claim. Furthermore, summary judgment is appropriate on the merits because Plaintiff fails to show an adverse employment action and, assuming arguendo a prima facie showing, Defendant proffers a legitimate, nondiscriminatory reason for the way it handled Plaintiff's grievances and Plaintiff fails to produce any evidence of pretext.

[7]Plaintiff raises disparate impact for the first time in her Response to Defendant's Motion. She does not raise it in her Complaint, nor has she moved to amend her Complaint to add such a cause of action. In addition, there is no indication that Plaintiff has exhausted her administrative remedies with respect to her disparate impact claim. Even so, Defendant addresses disparate impact in its reply and the undersigned will do so as well.

requirements for supervisory positions and the subjective criteria used by Defendant in filling supervisory positions create a disparate impact on minority employees.

A disparate impact claim alleges that a facially neutral employment practice has a disparate impact on a particular class of individuals. Watson v. Fort Worth Bank and Trust, 487 U.S. 977, 990, 108 S.Ct. 2777, 101 L.Ed.2d 827 (1988). Disparate impact cases also follow a burden shifting proof scheme. To establish a prima facie case of disparate impact, Plaintiff must identify the specific employment practice that is challenged. Id. at 994. Then, the plaintiff must establish causation by offering "statistical evidence of a kind and degree sufficient to show that the practice in question has caused the exclusion of applicants for jobs or promotions because of their membership in a protected group." Id. If the plaintiff establishes a prima facie case of disparate impact, the burden then shifts to the defendant to produce evidence that its employment practices are based upon legitimate business reasons. Id. at 998. Finally, if the defendant carries this burden, the plaintiff must then show that other tests or selection devices could achieve those business objectives without a similar disparate impact on minorities. Id.

Plaintiff identifies the education requirement and subjectiveness in filling open positions as the challenged practices. However, Plaintiff provides no statistical evidence. To prove disparate impact, Plaintiff must show statistical disparities that are sufficiently substantial as to raise an inference of causation. Id. at 995. Such an inference requires not only a significant difference in the comparison between the percentage of minority employees in a particular position and the baseline percentage, it requires a comparison to the appropriate baseline. That is, the plaintiff must show a significant difference between the percentage of minority employees and the percentage of minorities in the relevant pool of applicants. Id. at 997; Carter v. Ball, 33 F.3d 450, 456 (4th Cir. 1994).

In <u>Equal Employment Opportunity Commission v. United Virginia Bank</u>, 615 F.2d 147 (4th Cir. 1980), the Fourth Circuit offers a useful illustration of the degree of precision required of statistics to establish a prima facie case of disparate impact discrimination. There, the E.E.O.C. presented statistical evidence showing the percentage of African Americans in the labor force as a whole (27%) and the percentages of African Americans working as office/clerical workers (9.5%) and office managers (1.8%) for the defendant. Despite these discrepancies, the Fourth Circuit found these numbers insufficient to establish a <u>prima</u> <u>facie</u> case of discrimination. First, the court explained that statistical comparisons to the entire labor force have little probative value if the entire labor force is not qualified for the positions in question. <u>Id.</u> at 149 (citing <u>Hazelwood Sch. Dist. v. United States</u>, 433 U.S. 299 (1977); <u>Int'l Bhd. of Teamsters v. United States</u>, 431 U.S. 324 (1977)). The court found that managers, as well as office and clerical workers, require skills that are not possessed by every member of the labor pool, and thus rejected a comparison to the entire population. <u>Id.</u> at 150–54. Second, the court stressed that discrepancies must be statistically significant, which requires standard deviations exceeding two or three. <u>Id.</u> at 152.

Plaintiff appears to be relying on the fact that the Darlington facility has only three African Americans in a supervisory position, none of whom are women[8], Anderson Dep. at 18, to support her disparate impact claim. She presents no evidence of the number of supervisory positions or the number of African Americans Defendant employs or the number of African American employees who would be qualified for supervisory positions. Thus, Plaintiff cannot say whether the percentage of African-American supervisors is below the percentage of African Americans in the entire labor

---

[8]Plaintiff presents no evidence of the number of female supervisors or the number of supervisors over 40. Thus, her discriminatory impact claim appears to be limited to race.

force, much less the percentage in the qualified labor force. A single raw number is not sufficient to create a prima facie case of disparate impact discrimination. As such, Plaintiff's assertion of disparate impact fails as a matter of law.[9]

## V. CONCLUSION

For the reasons discussed above, it is recommended that Defendant's Motion for Summary Judgment (Document # 34) be granted and this case be dismissed in its entirety.

        s/Thomas E. Rogers, III
        Thomas E. Rogers, III
        United States Magistrate Judge

July 29, 2009
Florence, South Carolina

**The parties are directed to the important notice on the following page.**

---

[9]Even if Plaintiff had created a prima facie case, Defendant notes 1) that Bachelor's degrees are not required for supervisory positions–they are simply preferred, Anderson Dep. at 34, and 2) employers may properly consider subjective factors in hiring supervisors. Risher v. Aldridge, 889 F.2d 592, 597 (5th Cir. 1989) ("Subjective criteria necessarily and legitimately enter into personnel decisions involving supervisory positions."). Plaintiff has not shown that the subjectiveness in the hiring process resulted in a disproportionate selection rate for minorities. Furthermore, Plaintiff does not offer any alternatives for filling the supervisory positions that would prevent a disparate impact on minorities. Thus, Plaintiff's claim of disparate impact fails for these reasons as well.